**In re Samuel Lawrence BEWLEY and Elizabeth Jane Bewley, Debtors.**

Bankruptcy No. 93–02595–C.

United States Bankruptcy Court,
N.D. Oklahoma.

Feb. 2, 1996.

Kenneth V. Todd, Tulsa, OK, for Debtors.

Jay Golder, Tax Division, U.S. Department of Justice, Washington, DC, for I.R.S.

## MEMORANDUM OPINION

STEPHEN J. COVEY, Bankruptcy Judge.

This matter comes on to be heard upon Debtor's Motion to Disallow Claim of the Internal Revenue Service ("IRS") pursuant to 11 U.S.C. § 502(a). A trial of the matter was held on July 13, and July 28, 1995. At the conclusion of the trial, the Court took the matter under advisement. The parties have submitted post-trial briefs on the issues. After consideration of the evidence presented at the trial and the arguments and briefs of counsel, the Court finds as follows:

## STATEMENT OF FACTS

Phoenix Transportation, Inc. ("Phoenix"), an Oklahoma corporation, operated a flatbed trucking business within the continental United States. Samuel Lawrence Bewley ("Debtor") incorporated Phoenix in June 1987. Debtor had been in the trucking business since 1934; at the time of the trial he was 81 years old. When Phoenix was incorporated, Debtor served as president; Debtor's wife, Elizabeth Jane Bewley, served as secretary and treasurer; and Debtor's son, Mike L. Bewley ("Mike Bewley"), served as vice-president.

Initially, Debtor and his wife owned all of the stock of Phoenix. However, on January 2, 1990, Debtor and his wife transferred all of the stock of Phoenix to their son, Mike Bewley. Debtor was in ill health at the time of the stock transfer. Debtor was to receive

$250,000.00 at the rate of $2,500.00 per month from the sale of the stock.

The record is clear that Debtor was not a responsible person for Phoenix between January 2, 1990 and June 1, 1992.[1] Mike Bewley was in control of the operations of Phoenix and was the responsible person for Phoenix from early in 1990 until his death on May 28, 1992. Debtor's duties at Phoenix during this time were in sales only.

During the period when Mike Bewley was the responsible person for and had control of the operations of Phoenix, the company accrued outstanding federal withholding taxes in the amount of $110,742.57. These withholding taxes, called "trust fund taxes," include federal social security and income taxes withheld from employees wages. The outstanding trust fund taxes accrued during the second and third quarters of 1990, during all four quarters in 1991, and during the first quarter of 1992.

After Mike Bewley's death on May 28, 1992, Debtor began operating Phoenix again. On June 1, 1992, at the time Debtor assumed operating the company, Phoenix had approximately $8,662.00 in the bank. The company was generating income and accounts receivable of $90,000.00 to $100,000.00 per month. Phoenix's operating expenses were between $80,000 and $90,000 per month. During June of 1992, Phoenix received $84,991.15 in accounts receivable.

On or about June 17, 1992, Phoenix and the IRS entered into an agreement which allowed Phoenix to continue to operate and to make payments on the outstanding trust fund taxes owed to the IRS.[2] Phoenix agreed to pay a percentage of its gross monthly revenues to the IRS each month and to use the balance of gross revenues to meet operating expenses. During the months that followed, Phoenix remained in operation and made the agreed payments to the IRS on the outstanding taxes in the amount of $26,789.03

---

1. Debtor and the IRS have stipulated that Debtor was not a responsible person for Phoenix during the period when the outstanding federal withholding tax liability accrued.

2. Phoenix and the IRS executed IRS Form 433(d) on or about June 17, 1992. Form 433(d)

is not a part of the record. However, the testimony at trial indicated that the agreement required Phoenix to pay a percentage of its gross monthly revenues to the IRS in payment of the outstanding trust fund taxes.

and paid the trust fund taxes which accrued during that time. After approximately four months, Phoenix could not meet its financial obligations and the business was closed. During all times when Debtor operated Phoenix and was the responsible person for Phoenix, both before and after the time when Mike Bewley operated Phoenix, all current trust fund taxes were paid.

On August 5, 1993, the Debtor and his wife filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code. The IRS filed a proof of claim for a responsible person penalty assessment against the Debtor in the amount of $113,076.00 for unpaid trust fund taxes of Phoenix. Debtor filed a Motion to Disallow Claim of the Internal Revenue Service pursuant to 11 U.S.C. § 502(a).

## CONCLUSIONS OF LAW

■ The issue before the Court is whether Debtor is liable to the IRS for the trust fund taxes not paid by Phoenix when Debtor's son, Mike Bewley, was the responsible person. The IRS asserts that Debtor is subject to a penalty assessment under § 6672 because during the period after Debtor regained control of Phoenix, the company generated sufficient gross receipts to pay the outstanding trust fund taxes but used the funds to pay other operating expenses of the company. The United States Tax Code requires employers to deduct and withhold social security, unemployment and income taxes from the wages of their employees. 26 U.S.C. §§ 3102(a) and 3402(a). The statute requires that trust fund taxes withheld be placed in a special fund and held in trust for the benefit of the United States. 26 U.S.C. § 7501(a).

■ In an attempt to ensure collection of these trust fund taxes, the tax code also imposes a penalty upon corporate employees who are responsible for actually withholding and paying over the trust fund taxes. The statute provides as follows:

(a) Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or who willfully

attempts in any manner to evade or defeat such tax in the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid for.

26 U.S.C. § 6672. In order for a person to be held liable under § 6672, the following two requirements must be met: (1) the person must be responsible for the collection, accounting or paying over of the payroll withholding taxes, and (2) the person must have willfully failed to carry out the responsibility. *See Muck v. United States,* 3 F.3d 1378, 1380 (10th Cir.1993); *Elmore v. United States,* 843 F.2d 1128, 1132 (8th Cir.1988); *In re Rossiter,* 167 B.R. 919, 921 (Bankr.C.D.Cal.1994); *see also Burden v. United States,* 486 F.2d 302, 304 (10th Cir.1973), *cert. denied,* 416 U.S. 904, 94 S.Ct. 1608, 40 L.Ed.2d 109 (1974).

As the Statement of Facts, *supra,* makes clear, Debtor was not a responsible person for Phoenix during the period when the outstanding trust fund taxes accrued. Phoenix's outstanding tax liability accrued between January 1990 and June 1, 1992. Debtor was a responsible person for Phoenix between June 1987 and January 1990 and again subsequent to June 1, 1992. It must be emphasized that during the time when Debtor was the responsible person for Phoenix, all trust fund taxes were paid. Accordingly, our inquiry is whether Debtor is liable under § 6672 for unpaid withholding taxes which accrued while Mike Bewley was the responsible person for Phoenix.

The Supreme Court discussed the issue of a person who gains control of a corporation *after* trust fund tax liabilities have accrued in *Slodov v. United States,* 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). In *Slodov,* an orthodontist ("Slodov") purchased three catering businesses. The catering businesses owed approximately $250,000.00 in trust fund taxes. These funds were dissipated by the previous owner before Slodov acquired the businesses. When Slodov assumed control of the three corporations, they "owed back taxes, were overdue on their supplier accounts, and had no cash." *Slodov,*

436 U.S. at 251, 98 S.Ct. at 1787. The corporations apparently had no "unencumbered assets"[3] which the IRS could use to satisfy its claim by levy and sale. Slodov talked with IRS officials who indicated they had no objection to his continuing to operate the businesses if Slodov agreed to meet current tax liabilities and to pay the arrearage as soon as possible.[4]

After Slodov assumed control, the businesses acquired funds which were used to pay operating expenses. After a few months of operation, the corporations ceased doing business and Slodov filed for bankruptcy. The IRS assessed responsible person penalties against Slodov for the previously accrued taxes in an amount of approximately $250,-000.00.

In *Slodov,* the Supreme Court held that Slodov was not liable for the responsible person penalties. Because the three corporations did not have unencumbered funds with which to pay the trust fund tax liability at the time Slodov took over, Slodov had no liability for the taxes. The Court in *Slodov* stated as follows:

> We hold that a "responsible person" under § 6672 may violate the "pay over" requirement of that statute by willfully failing to pay over trust funds collected prior to his accession to control *when at the time he assumed control the corporation has funds impressed with a trust under § 7501,* but that *§ 7501 does not impress a trust on after-acquired funds, and that the responsible person consequently does not violate § 6672 by willfully using employer funds for purposes other than satisfaction of the trust-fund tax claims of the United States when at the time he assumed control there were no funds with which to satisfy the tax obligation and the funds thereafter gener-*

> *ated are not directly traceable to collected taxes referred to by that statute.*

*Slodov,* 436 U.S. at 259–60, 98 S.Ct. at 1791 (emphasis added). Additionally, in *Slodov,* the Court clearly declined to hold that all after-acquired cash of the corporation was impressed with a trust in favor of the United States. The Court stated that "[n]othing whatever in § 6672 or its legislative history suggests that the effect of the requirement to 'pay over' was to impress a trust on the corporation's after acquired cash, however." *Slodov,* 436 U.S. at 254, 98 S.Ct. at 1789.

Similar to the circumstances present in *Slodov,* after Debtor regained control of Phoenix, Phoenix entered into an agreement with the IRS. Phoenix and the IRS agreed that the business would continue to operate and pay a percentage of gross monthly revenues to the IRS on the outstanding trust fund taxes. At the time Debtor assumed control of the operations of Phoenix, the company had $8,662.00 in cash. Applying the *Slodov* analysis, these liquid assets on hand at the time Debtor assumed control should have been paid to the IRS on the trust fund taxes previously accrued. This amount is the full extent of the Debtor's liability on outstanding trust fund taxes. *See In re Rossiter,* 167 B.R. 919 (Bankr.C.D.Cal. 1994).

In addition, as the Supreme Court recognized in *Slodov,* if the responsible person penalty attached upon payment of operating expenses by a person who gains control after outstanding trust fund taxes have accrued, this policy would discourage well-counseled individuals from attempting to rehabilitate a financially troubled company unless all outstanding trust fund taxes could be paid first. *Slodov,* 436 U.S. at 252–53, 98 S.Ct. at 1787–88. Although it is in the IRS's best interest to encourage continued operation of a compa-

---

**3.** The IRS cites the United States Court of Appeals for the Seventh Circuit's decision in *Purdy Co. v. United States,* 814 F.2d 1183 (7th Cir. 1987), to support its argument that liquid assets include any funds collected within sixty days of the change in control. This Court believes that the Seventh Circuit's decision in *Purdy* cannot be reconciled with the Supreme Court's holding in *Slodov* and this Court respectfully declines to follow the definition of liquid assets articulated in *Purdy.*

**4.** In these circumstances, the practice of the IRS is to be "flexible" and "not insist that the corporation discontinue operations, thereby substituting for certain loss at least the potential of recovering back taxes if the corporation makes a financial recovery." *Slodov,* 436 U.S. at 252, 98 S.Ct. at 1787.

ny in order to recoup outstanding taxes, such a policy would discourage this practice by anyone who is aware of § 6672. If the IRS were to prevail in these circumstances, a "responsible person" would make himself personally liable under § 6672 by using gross revenue to operate the business as long as any "third-party employment tax bill" remains unpaid. *Slodov*, 436 U.S. at 252, 98 S.Ct. at 1787. In the present case as in *Slodov*, the IRS benefits from having someone continue the operation of a business in the hope of recouping back taxes.

Further, under the statute, liability is imposed on responsible parties only for a willful failure to pay trust fund taxes. 26 U.S.C. § 6672. The Supreme Court noted in *Slodov* that the fact that § 6672 is violated only by a willful failure to pay is "strong evidence" that Congress did not intend to impose liability without personal fault. Thus, the "pay over" requirement of § 6672 is not "an absolute duty on the responsible person to pay back taxes." *Slodov*, 436 U.S. at 254, 98 S.Ct. at 1788–89.

In the present case, Phoenix and the IRS had agreed that monthly payments would be made on the arrearage. The IRS allowed Phoenix to continue to use the gross monthly revenues over and above the required payments to operate. The IRS's agreement which allowed Phoenix to continue in operation precludes a finding of Debtor's willful failure to pay. Debtor failed to pay pursuant to an agreement. Therefore, such a failure to pay cannot be construed as willful.

In conclusion, at the time Debtor assumed control of the operations of Phoenix, the company had $8,662.00 in cash. As stated above, under *Slodov*, these liquid assets on hand at the time Debtor assumed control should have been paid to the IRS on the trust fund taxes previously accrued. The evidence at the trial showed that after Debtor regained control of Phoenix, Phoenix made payments for previ-

ously accrued trust fund taxes in the amount of $26,789.03. Accordingly, it is the order and judgment of this Court that Debtor has no liability as a responsible person for Phoenix and the claim of the IRS is denied in full.[5] A separate judgment order consistent with this memorandum opinion shall be entered.

---

5. The IRS cites a decision of the United States Court of Appeals for the Tenth Circuit, *Muck v. United States*, 3 F.3d 1378 (10th Cir.1993), to support its position that Debtor should be held liable for the outstanding trust fund taxes of Phoenix. *Muck* is inapposite to the facts presently before the Court. Unlike Debtor, Muck, the president of a corporation with delinquent federal withholding taxes, was a responsible person for the corporation **throughout** the time when the withholding taxes were not paid. Although the corporation entered into an agreement to pay the accrued delinquent taxes with the IRS, the agreement did not absolve Muck's liability as a responsible person.